IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        v.                                22-CR-6165DGL

MICHAEL ALAN JONES,

              Defendant.

_____

### STATEMENT OF THE GOVERNMENT WITH RESPECT TO SENTENCING FACTORS AND MOTION PURSUANT TO U.S.S.G. §3E1.1(b)

**PLEASE TAKE NOTICE**, that the government has reviewed the Pre-sentence Report (PSR) with respect to sentencing factors as to MICHAEL ALAN JONES in this action.   The government has no objections to the PSR.

### SENTENCING PROCEDURE

Title 18, United States Code, Section 3553(a) requires that this Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]."   In determining the sentence, this Court must consider the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

1

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of Title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of Title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of Title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of Title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be

incorporated by the Sentencing Commission into amendments issued under section 994(p) of Title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In executing these statutory responsibilities, the Court must first correctly calculate the applicable Guidelines range. Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 596 (2007). This range is "the starting point and the initial benchmark." Id.   Although this Court must treat the Guidelines as advisory, United States v. Ratoballi, 452 F.3d 127, 131-32 (2d Cir. 2006), an error in determining the applicable Guideline range or the availability of departure authority nonetheless would be the type of procedural error that could render a sentence unreasonable on appellate review. United States v. Selioutsky, 409 F.3d 114, 118 (2d Cir. 2005); United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc)(a district court commits procedural error where it fails to calculate the Guidelines range, makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory).

While this Court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456, 2465 (2007), neither are sentencing judges "free to ignore the Guidelines, or to treat them merely as a 'body

of casual advice.'" <u>Cavera</u>, 550 F.3d at 189, <u>quoting</u> <u>United States v. Crosby</u>, 397 F.3d 103, 113 (2d Cir. 2005); <u>See</u> <u>also</u> <u>United States v. Jones</u>, 531 F.3d 163, 174 (2d Cir. 2008) ("respectful consideration of the Guidelines . . . necessarily channels district court sentencing discretion").   Further, the Second Circuit has observed that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be [upheld as] reasonable in the particular circumstances." <u>United States v. Fernandez</u>, 443 F.3d 19, 27 (2d Cir. 2006).   <u>See</u> <u>also</u> <u>United States v. Eberhard</u>, 525 F.3d 175, 179 (2d Cir. 2008).

Next, after giving the parties an opportunity to argue for whatever sentence they deem appropriate (consistent with any limitations imposed by the plea agreement), this Court must then "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party." <u>Gall</u>, 128 S.Ct. at 596.   In determining whether the § 3553(a) factors support the requested sentence, the Court "must make an individualized assessment based on the facts presented." <u>Id.</u>, at 597.   In that regard, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. <u>See</u> <u>Cavera</u>, 550 F.3d at 190-91.   If a non-Guidelines sentence is warranted, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." <u>Gall</u>, 128 S.Ct. at 597.

After settling on the appropriate sentence, the Court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Id., citing Rita, 127 S.Ct. at 2456.   Although this Court need not engage in "robotic incantations" with respect to its consideration of the § 3553(a) factors, Fernandez, 443 F.3d at 30, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." Rita, 127 S.Ct. at 2468.   Further, "a district court imposing a non-Guidelines sentence . . . should say why she is doing so, bearing in mind . . . that 'a major departure [from the Guidelines] should be supported by a more significant justification than a minor one.'" Cavera, 550 F.3d at 193, quoting Gall, 128 S.Ct. at 197 (ellipses added, brackets in original).

## REQUEST FOR SENTENCE WITHIN THE APPLICABLE GUIDELINE RANGE

For the following reasons, the Court should impose a sentence within the recommended sentencing range of 24 to 30 months imprisonment.

First, the nature and circumstances of the offense are plainly serious and a sentence within the range recommended by the Sentencing Guidelines is sufficient but not greater than necessary to reflect the seriousness of the offense.   The crime to which the defendant, a two-time convicted felon, pleaded guilty involved the possession of a semiautomatic rifle, as well as a quantity of ammunition.   The offense also involves deception by the defendant in

acquiring this rifle.   It also involves deception by the defendant in acquiring the ammunition which law enforcement found in the car.

In this case, on March 19, 2022, deputies from the Genesee County Sheriff's Office ("GCSO") saw a gray Nissan Sentra traveling in the Town of Leroy, New York. GCSO deputies conducted a traffic stop of the vehicle for various New York State traffic violations, including failure to signal before turning and vehicle maneuvering consistent with eluding. GCSO deputies identified the driver as the defendant.   In the passenger seat, GCSO deputies identified a person whose initials are PK.

The deputies observed several knives, military surplus gear, and two compound bows inside the vehicle. A backpack was observed on the passenger side floorboard where PK was sitting.  Bolt cutters were observed protruding from the backpack and the deputies later located multiple pry bars, bolt cutters, and gloves inside of a bag which was believed to be consistent with burglary tools. The deputies also observed pepper spray and 7.62 X 51mm ammunition inside the vehicle.

When asked about the ammunition found in the vehicle, neither the defendant nor PK claimed ownership.   GSCO deputies asked the defendant if there was a firearm inside the vehicle. JONES responded, "There shouldn't be."   The defendant later told deputies he

owned everything in the vehicle except the backpack located near the passenger seat.   He also said that the ammunition was for a rifle and was "someone else's."

Through the investigation, GCSO deputies determined the license plate on the Nissan Sentra did not match the vehicle to which it was affixed. North Carolina license plate JHW6979 was registered to a person whose initials are BW. The North Carolina plate was removed from the vehicle and the vehicle was towed from the scene. After an inventory search of the vehicle by GCSO, a second license plate, Georgia RPD2425, was discovered inside the vehicle. RPD2425 is an expired registration and formerly registered to a person whose initials are DTM.

Additional items were discovered in the vehicle during the inventory search, including various military surplus gear, Beofang handheld radios, additional knives, and the Army Tactical Combat Casualty Care handbook. Another book was found inside the vehicle which appeared to be in another language.   A Palmetto State Armory AR-15 rifle, bearing serial number SCD729076, and a thirty-round Magpul PMAG magazine was found in the trunk of the vehicle.   The defendant stated, in sum and substance, he had purchased the firearm a "long time ago" but never fired it. The defendant also said, in sum and substance, he brought it to New York from North Carolina.

On April 19, 2022, the FBI interviewed a person whose initials are HN. HN was shown a picture of the defendant and positively identified him as a person HN knew to be

named Michael but did not recall his last name.   FBI discussed with HN that HN and the defendant worked together at the Cracker Barrel in Mebane, North Carolina. HN was shown a picture of a Palmetto State Armory rifle, serial number SCD729076. At first HN did not recognize the rifle but then told FBI Agents he purchased the rifle for the defendant.   HN purchased the rifle through Palmetto State Armory website and picked it up at A-1 Guns in Graham, North Carolina. HN told agents, in sum and substance, that HN had purchased rifle at the defendant's request and that the defendant told HN the defendant had a problem with his license and he could not purchase a rifle himself.   The defendant paid HN using PayPal and showed the FBI Agents payment history on HN's PayPal. Upon seeing the history of the PayPal transaction from the defendant, HN recalled the defendant's last name.   During a subsequent conversation by telephone later that same day, law enforcement asked HN if the defendant ever discussed being a part of any extremist groups.   HN relayed that the defendant told him a while ago that the defendant knew people affiliated with a Neo-Nazi group.   HN said he did not know if the defendant was part of any extremist group.

During a post-arrest interview with law enforcement, the defendant admitted, in sum and substance, he was in the area visiting friends from North Carolina, where he resided.   He would not discuss his relationship with PK.   He said the rifle in the car did not belong to PK and he stated reluctance to discuss the rifle further.

Additionally, a subsequent investigation conducted by the FBI determined that the ammunition had recently been purchased at a sporting goods store in Batavia, New York, by

PK.   The defendant, according to surveillance video of the transaction, arrived at the sporting goods store with PK and departed with PK and stood beside PK at the time PK purchased the ammunition.

The Palmetto State Armory AR-15 and magazine found in the defendant's vehicle not only was possessed in violation of federal law, but also violated the New York State SAFE Act.   Specifically, the rifle was equipped with a flash hider, capable of accepting a removable magazine without a pinned magazine release, and a was equipped with a telescopic stock. Subsequently, the defendant was arrested for two counts of Criminal Possession of a Weapon and various traffic offenses. The defendant was arraigned before the Honorable Judge Sehm of the Leroy Town Court and released under the supervision of Genesee Justice during the early morning hours of March 20, 2022.   The federal investigation determined the defendant was a two-time convicted felon and prohibited from possessing a firearm and ammunition.

The descriptions provided herein, while taken generally from the factual statement of the complaint as well as information learned from law enforcement during the investigation, are meant to only provide an overview of the offense conduct, the seriousness of which cannot be understated.   The defendant was prohibited from possessing the firearm and ammunition found in the car.   He had previously been convicted, subsequent to two guilty pleas, to committing Crimes Against Nature, offenses for which the defendant could have received a prison term in excess of one year.   The government relies on the facts underlying these convictions, which are specified in Paragraph 38 of the PSR, in support of its contention that

9

the offenses for the defendant had previously been convicted represent very serious violations of the law.[1]

A sentence within the 24-month to 30-month range as recommended by the Sentencing Guidelines reflects the seriousness of the offense and promotes respect for the law and provides a just punishment.   In the view of the government, this sentence represents a fair acknowledgment that the defendant committed a serious offense in possessing a semiautomatic rifle which, not only violated New York State law by the nature of certain specified characteristics, but was also done in violation of federal law.   Such a sentence does the same when considering the defendant was not permitted to possess the ammunition recovered.   A sentence within the 24 to 30-month range is still a significant term of imprisonment which reflects the seriousness of the offense and promotes respect for the laws prohibiting such conduct.

Further, a sentence within the 24 to 30-month range also adequately deters such conduct and protects the public from further crimes of the defendant.   A sentence within this range is a substantial prison sentence when weighing the factors specified in the U.S.S.G. and 18 U.S.C. § 3553(a).   This sentence would act as a deterrent to the defendant, should he consider engaging in similar conduct once released from prison, and others who would consider committing such an offense because of its length.

---

[1] 18 U.S.C. §3553(a) permits the sentencing Court to consider the history and characteristics of the defendant.   The government relies on this information to illustrate the importance of a guideline prison sentence in this case.

A sentence within the 24-month to 30-month range fits within the types of sentences, and sentencing ranges, available for these offenses with defendants who engage in similar conduct.   While the maximum possible penalty for this instant offense, that is violations of 18 U.S.C. § 922(g)(1), is a ten-year prison term, this sentence falls within the recommended sentencing range under the sentencing guidelines.

As such, a sentence within the 24 to 30-month range is sufficient but not greater than necessary to meet the objects of sentencing specified in Title 18, United States Code, Section 3553(a).   Respectfully, the government asks the Court to a sentence within this sentencing range.

The defendant is required by 18 U.S.C. §3013 to pay the sum of $100 due at the time of sentencing.

Upon the ground that the defendant timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently, the government hereby moves the Court to apply the additional one (1) level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(b).

In the event present counsel for the defendant will continue to represent the defendant after sentencing in regard to the collection of unpaid financial obligation(s), it is requested that a letter so advising be sent to:

Asset Forfeiture/Financial Litigation Unit
U.S. Attorney's Office--WDNY
138 Delaware Avenue
Buffalo, New York 14202

If a letter is not received within 10 days of sentencing, the defendant will be directly contacted regarding collection of the financial obligation(s).

DATED:     Rochester, New York, September 20, 2023.

Respectfully submitted,

TRINI E. ROSS
United States Attorney
WESTERN DISTRICT OF NEW YORK

BY:     *s/ Charles E. Moynihan*
Charles E. Moynihan
Assistant U.S. Attorney
100 State Street, Room 500
Rochester, New York   14614
Telephone: (585)399-3971
Charles.moynihan@usdoj.gov

TO:   Steven Slawinski, Esq.
Jessica Lewis-Sleet, U.S. Probation Officer

12